IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| NELSON MOODY, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | 14 CV 8809 |
| ) | |
| The CITY OF CHICAGO, a Municipal ) | Judge |
| Corporation, and Chicago Police Officers ) | |
| ONETA SAMPSON #4157, JAMIE ) | Magistrate Judge |
| CHISEM #3202, FATIMA ARIF #3202 ) | |
| MICHAEL O'CONNOR #8342, OSCAR ) | |
| ESCALANTE #15081, SCOTT BITTNER ) | |
| #11126, ROBERT GALLAS #17815, ) | |
| VINCENT CIOCCI #12914, DENNIS ) | |
| BARNES #2402, RICHARD MORAVEC ) | |
| #933, PAUL HABIAK # 14939, DAVID ) | |
| GARZA #14970, and Detectives THOMAS ) | |
| KELLY #20229, and ROGER MURPHY ) | |
| #20681, ) | |
| ) | |
| Defendants. ) | |

## COMPLAINT

Plaintiff, NELSON MOODY, ("Plaintiff"), by and through his attorneys, Torreya L. Hamilton and Tony Thedford, makes the following complaint against Defendants City of Chicago, Illinois ("Defendant City"), and Chicago Police Officers ONETA SAMPSON, JAMIE CHISEM, FATIMA ARIF, MICHAEL O'CONNOR, OSCAR ESCALANTE, SCOTT BITTNER, ROBERT GALLAS, VINCENT CIOCCI, DENNIS BARNES, PAUL HABIAK, DAVID GARZA and Detectives THOMAS KELLY #20229 and ROGER MURPHY #20681 (collectively "Defendant Officers"):

### JURISDICTION AND VENUE

1. This action is brought pursuant to 42 U.S.C. §1983 to redress the deprivation under color of law of Plaintiff's rights as secured by the United States Constitution and Illinois common law.

2. This Court has jurisdiction of the action pursuant to 28 U.S.C. §§1331, 1343 and 1367.

3. Venue is proper under 28 U.S.C. § 1391(b). All parties reside in this judicial district and the events giving rise to the claims asserted in this complaint occurred within this district.

## PARTIES

4. Plaintiff NELSON MOODY is a thirty-three year old resident of Chicago, Cook County, Illinois.

5. Defendant OFFICERS were, at all times relevant to this complaint, Chicago police officers employed by Defendant CITY, acting within the scope of their employment under color of law.

6. Defendant CITY is a municipal corporation and public entity incorporated under the laws of Illinois.

## FACTS

7. On September 17, 2008, at approximately 3:54 p.m., Plaintiff was going to a Laundromat near 209 East Garfield Boulevard in Chicago, Illinois.

8. At the same time, Defendant SAMPSON was off-duty and driving a vehicle near the same location.

9. At the same time, Defendant BARNES was also off-duty and near the same location.

10. Defendant SAMPSON, BARNES and Plaintiff all observed two groups of men arguing and then shooting at each other.

11. Plaintiff tried to run away from the shooting, but was stuck by a stray bullet in the back and fell to the ground.

12. At no time did Defendant SAMPSON see any evidence that Plaintiff was involved in this shooting.

13. At no time did Defendant BARNES see any evidence that Plaintiff was involved in this shooting.

14. Plaintiff was an innocent bystander that was caught in what appears to have been gang crossfire.

15. Defendant SAMPSON stopped, exited her vehicle, and attended to Plaintiff as he lay on the sidewalk bleeding.

16. Defendant SAMPSON called 911 to report what she had seen and to summon medical assistance for Plaintiff and another individual who had been shot in the leg.

17. At no time during any of her multiple 911 calls, did Defendant SAMPSON ever identify Plaintiff as a suspect in the shooting.

18. At no time during any of her 911 calls did Defendant SAMPSON ever report seeing Plaintiff in possession of a shotgun.

19. Defendant BARNES also made a 911 call.

20. At no time did Defendant BARNES ever identify Plaintiff as a suspect in the shooting.

21. Plaintiff was transported by the Chicago Fire Department to John H. Stroger, Jr. where he underwent emergency surgery for a gunshot would to his back.

22. Defendant SAMPSON reported what she had observed to first responding police officers, including several of the on-duty Defendant OFFICERS.

23. Defendant SAMPSON's original version of events did not include any evidence that she had seen Plaintiff with a gun or that he was in any way involved in the shooting.

24. Defendant BARNES also did not report any evidence that Plaintiff was involved in the shooting, or had possession of a gun.

25. At some point, Defendant SAMPSON changed her story and falsely claimed to have seen Plaintiff in possession of a shotgun.

26. Defendant OFFICERS were present at the crime scene and were aware that Defendant SAMPSON had drastically changed her story.

27. Defendant OFFICERS never documented the change in Defendant SAMPSON's story in any police report, or otherwise disclosed this exculpatory evidence to prosecutors.

28. On information and belief, one or more of Defendant OFFICERS suggested that Defendant SAMPSON change her story to identify Plaintiff has having been involved in the shooting.

29. Defendant BARNES witnessed the shooting and though he was aware that Plaintiff was not involved, he failed to disclose this fact to his supervisors or to prosecutors.

30. Defendants KELLY and MURPHY were the primary detectives assigned to investigate the shooting and interviewed witnesses at the scene, including Defendant SAMPSON and BARNES, and the first responding police officers.

31. On information and belief, Defendants KELLY and MURPHY knew Defendant SAMPSON had given a previous, inconsistent statement regarding the identity of the shooter and also knew that SAMPSON's second statement identifying Plaintiff as the offender was not corroborated by any physical evidence or the statements of any other witnesses.

32. Defendants O'CONNOR and ESCALANTE placed Plaintiff under arrest at 6:45 p.m., three hours after the shooting, while he was awaiting surgery at Stroger Hospital.

33. Defendant OFFICERS caused Plaintiff to be falsely charged with and prosecuted for multiple weapon offenses.

34. Plaintiff spent time in custody as a result of the false charges Defendant OFFICERS caused to be placed against him.

35. Plaintiff and his family had to hire a criminal defense attorney, at considerable expense, to defend him against the false charges Defendant OFFICERS placed against him.

36. Plaintiff's criminal case was pending for more than five years.

37. During Plaintiff's criminal prosecution, Defendant SAMSON again changed her story, causing prosecutors to re-indict Plaintiff for an even more serious felony offense.

38. Ultimately, Plaintiff stood trial before a jury for the false charges with which Defendant OFFICERS caused him to be charged.

39. On November 14, 2013, a jury acquitted Plaintiff of all charges after deliberating for less than thirty minutes.

## COUNT I
### 42 U.S.C. §1983 - Due Process Claim

40. Plaintiff re-alleges the preceding paragraphs as if fully re-stated here.

41. Defendant OFFICERS withheld material exculpatory evidence from Plaintiff and from prosecutors in violation of the Fourteenth Amendment to the United States' Constitution.

42. As a direct and proximate result of this misconduct, Plaintiff suffered damages as described more fully above.

WHEREFORE, Plaintiff prays judgment against Defendant OFFICERS in a fair and just amount sufficient to compensate Plaintiff for the injuries he has suffered, plus a substantial sum in punitive damages, as well as costs, attorney's fees, and such other relief as is just and equitable.

## COUNT II
### 42 U.S.C. §1983 - Conspiracy

43. Plaintiff re-alleges the preceding paragraphs as if fully re-stated here.

44. Defendant OFFICERS either impliedly or expressly conspired to violate Plaintiff's constitutional rights as described above.

45. In furtherance of this conspiracy, Defendant OFFICERS conspired to withhold material exculpatory evidence from Plaintiff and prosecutors.

46. As a direct and proximate result of this conspiracy, Plaintiff suffered damages as described more fully above.

WHEREFORE, Plaintiff prays judgment against Defendant OFFICERS in a fair and just amount sufficient to compensate Plaintiff for the injuries he has suffered, plus a substantial sum in punitive damages, as well as costs, attorney's fees, and such other relief as is just and equitable.

## COUNT III
### Illinois Malicious Prosecution

47. Plaintiff re-alleges the preceding paragraphs as if fully re-stated here.

48. As more fully described above, Defendant OFFICERS willfully and wantonly initiated criminal proceedings against Plaintiff and/or caused the criminal proceedings to be initiated or continue against him, without probable cause to believe he had committed a crime.

49. With malice, willfulness, and/or reckless indifference to Plaintiff's rights, Defendant OFFICERS created, or acquiesced to, false and/or inaccurate police reports, causing him to be prosecuted for serious felony offenses.

50. In addition, Defendant OFFICERS gave false accounts, or failed to disclose material exculpatory evidence to other police officers and/or Assistant State's Attorneys and/or they fabricated inculpatory evidence.

51. The criminal proceedings against Plaintiff were terminated in his favor, in a manner indicative of innocence.

52. As a direct and proximate result of Defendant OFFICERS' malicious prosecution, Plaintiff suffered financial and emotional damages for having to defend himself against the false charges placed against him and for having to spend time wrongfully imprisoned.

53. Illinois law provides that public entities, such as Defendant CITY, are directed to pay any compensatory damages on a tort judgment against an employee who was acting within the scope of his or her employment.

54. At all relevant times, Defendant OFFICERS were agents of Defendant CITY, and acting within the scope of their employment as Chicago Police Officers. Defendant CITY, therefore, is liable as principal for all torts committed by Defendant OFFICERS.

   WHEREFORE, Plaintiff prays for judgment against Defendant CITY in an amount reasonable to compensate him for the damages he has suffered, as well as such other relief as is just and equitable.

**Plaintiff demands trial by jury.**

Respectfully Submitted,

NELSON MOODY, Plaintiff

By: /s Torreya L. Hamilton
    One of Plaintiff's Attorneys

HAMILTON LAW OFFICE, LLC
53 West Jackson Boulevard, Suite 452
Chicago, IL 60604
312.726.3173
tlh@thehamiltonlawoffice.com
Attorney Number: 6229397

By: /s Tony Thedford
    One of Plaintiff's Attorneys

The Law Office of Tony Thedford
53 West Jackson Boulevard, Suite 452
Chicago, IL 60604
312.614.0866
Attorney Number: 6239316